IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BRUCE CALDWELL WILLIAMS,<br>Debtor-Appellant,<br>v.<br>PKN INVESTMENTS, LLC,<br>Appellee. | Case No. 22-cv-03295-CRB<br><br>**ORDER AFFIRMING BANKRUPTCY COURT ORDER** |

Debtor-Appellant Bruce C. Williams ("Williams") appeals from an order of the United States Bankruptcy Court, Honorable Elaine Hammond, pertaining to the non-judicial foreclosure sale of his piece of property. See generally Appellant's Opening Brief (dkt. 10)[1]; Appellee's Appendix Ex. S (dkt. 6-2) at 148–49. In short, Williams contends that, upon reinstating Williams's bankruptcy case, Judge Hammond should have reversed the foreclosure sale that occurred while his bankruptcy case was dismissed. See generally Appellant's Opening Brief. As explained below, the Court concludes that Judge Hammond was correct in declining to do so, and AFFIRMS her order.

**I.   BACKGROUND**

Williams owned real property located at 13087 Wells Fargo Drive, Groveland, California 95321 ("Groveland property"). See id. The Groveland property was one of three parcels of real property that Williams owned, and was not his residence. Appellee's

---

[1] Through no fault of Williams, Appellant's Opening Brief did not appear on this Court's docket until February 2, 2023. See Order Directing Clarification (dkt. 9); Receipt of Bankruptcy Record on Appeal (dkt. 10); Appellee Brief in Response (dkt. 11); Appellant Response (dkt. 12). The Court now has access to all of the parties' briefs, has carefully reviewed them, and deems them timely filed.

Appendix Ex. A (dkt. 6-1) at 13–14; id. at 2 (listing 660–62 S. 11th St. San Jose as where he lives); Appellee's Appendix Ex. D (dkt. 6-1) at 30 (same); Appellant's Opening Brief at 1 (same); Appellant's Reply Brief (dkt. 8) at 1 (same).  Appellee PKN Investments, LLC ("Appellee") was the holder of the first trust deed secured against the Groveland property.  Appellee' Appendix Ex. M (dkt. 6-1) at 87, 97.  Pursuant to the loan documents, Williams owed Appellee monthly payments of $832.50 per month.  Id. at 81 ¶ 5.  Around March 1, 2021, Williams defaulted on the loan by failing to make his monthly payment.  Id. at 82 ¶ 6.  Based on his default and failure to cure, Appellee commenced non-judicial foreclosure proceedings against the Groveland property, and scheduled a non-judicial foreclosure sale for December 9, 2021.  Id. at 82 ¶ 7.  Williams voluntarily commenced his Chapter 13 bankruptcy proceeding on December 6, 2021, just before the scheduled foreclosure sale would have occurred.  Appellee's Appendix Ex. A.

### A. First Dismissal and Foreclosure Sale

Immediately, the bankruptcy court recognized the deficiencies in Williams's filing.  On December 6, 2021, the same day Williams filed his voluntary petition, the bankruptcy court issued an "ORDER FOR INDIVIDUALS IN CHAPTER 13 CASE TO FILE REQUIRED DOCUMENTS AND NOTICE OF AUTOMATIC DISMISSAL."  Appellee's Appendix Ex. B (dkt. 6-1) ("Order to File Required Documents") at 24.  The order stated that Williams "failed to file the documents listed below when the case was commenced," checking off over a dozen items, and ordered that "unless, within 14 days of the petition date, [Williams] file[s] each document listed above, the court may dismiss this case without further notice or a hearing.  11 U.S.C § 521(a), Fed. R. Bankr. P. 1007(b)(1), (c)."  Id.  The order noted that Williams could request an extension of time.  Id.  Also on December 6, 2021, the bankruptcy court issued a "NOTICE OF FAILURE OF DEBTOR(S) TO PROVIDE STATEMENT OF SOCIAL SECURITY NUMBER AND/OR LIST OF CREDITORS."  Appellee's Appendix Ex. C (dkt. 6-1) ("Notice") at 27–28.  That notice informed Williams that his petition was defective because "The List of Creditors as required by 11 U.S.C § 521(a)(1) was not submitted with the petition."  Id.  It

further stated that Williams "must file the document(s) indicated above within fourteen (14) days of the date of this notice, or your case may be dismissed without further notice." Id.

Williams failed to file all of the required documents within fourteen days. Appellee's Appendix Ex. E (dkt. 6-1) at 43–44 ("Order Extending Deadline"). Nevertheless, on December 22, 2022, on its own motion, the bankruptcy court extended the deadline for Williams to file the missing documents.[2] Id. at 43. The bankruptcy court explained that "[i]n the event the debtor fails to timely file the above documents by January 5, 2022, this case may be dismissed without further notice or hearing." Id. at 44.

Williams again failed to file all of the required forms. See Appellee's Appendix Ex. F (dkt. 6-1) ("First Dismissal Order") at 48. Accordingly, on January 20, 2022—an additional fifteen days from what the court allowed—the court dismissed Williams's bankruptcy case for "fail[ure] to comply with [the] court's Order Extending Deadline." Id. The court sent this First Dismissal Order to Williams at his home address. Id. at 49.[3]

On February 3, 2022, two weeks after the First Dismissal Order, the foreclosure sale took place, and a third party purchased the Groveland property. Appellee's Appendix Ex. Q (dkt. 6-2) at 127. There were surplus proceeds, which the foreclosure trustee disbursed to junior lienholders. Id. at 24 ¶ 8.

### B.   Motion to Reinstate Bankruptcy Case

Five days later, Williams filed a Motion to Reinstate his bankruptcy case. Appellee's Appendix Ex. G (dkt. 6-1) at 51–52. He did not assert that he lacked notice of the dismissal or any other documents. Id. Rather, he argued that the January 20, 2022 order had dismissed his petition "for failure to file documents without specifying which document(s) was missing." Id. at 51.[4] And he stated: "Having filed all of the documents

---

[2] These were Schedule G, Schedule H, the Chapter 13 Plan, and the List of Creditors as required by 11 U.S.C. § 521(a)(1). Id.
[3] It had also sent the Order to File Required Documents, Appellee's Appendix Ex. B (dkt. 6-1) at 25, Notice, Appellee's Appendix Ex. C (dkt. 6-1) at 28, and Order Extending Deadline, Appellee's Appendix Ex. E (dkt. 6-1) at 45, to that address.
[4] This is technically true, but that order explained that Williams had failed to comply with

3

specified in the December 23, 2021 order, the Debtor believes that the order dismissing the Bankruptcy may have been entered in error." Id.  He requested that the "matter be reinstated." Id. at 52.

Initially, the bankruptcy court denied Williams's Motion to Reinstate, explaining on February 11, 2022 that "[a]mong the documents Debtor needed to file was the List of Creditors required by 11 U.S.C. § 521(a)(1), however, it was never filed." Appellee's Appendix Ex. I (dkt. 6-1) at 58.  It continued: "On January 20, 2022, the court dismissed the case for failure to file the List of Creditors." Id.  Williams filed a list of creditors that same day.  See Appellee's Appendix Ex. H (dkt. 6-1) at 54–56.[5]

The bankruptcy court, on February 14, 2022, granted Williams's Motion to Reinstate his bankruptcy case, vacating the First Dismissal Order as of that date. Appellee's Appendix Ex. J (dkt. 6-1) at 62.  Williams had not requested, and the bankruptcy court did not grant, nunc pro tunc relief.

### C. Second Dismissal and Motion to Reverse Foreclosure

Shortly thereafter, there was another dismissal, which is not actually relevant, although Williams appears to believe that it is.  On March 18, 2022, on a motion brought by the Chapter 13 Trustee based on Williams's failure to timely file a valid pre-petition credit counseling certificate, the court dismissed the bankruptcy case again.  Appellee's Appendix Ex. N (dkt. 6-2) at 4–5.

On March 24, 2022 and then on April 5, 2022, Williams moved to reverse the February 3, 2022 foreclosure on the Groveland property, arguing that as "soon as my bankruptcy was disrupted they auctioned it off." Appellee's Appendix Ex. O (dkt. 6-2) at 8–9; see also Appellee's Appendix Ex. P (dkt. 6-2) (amended motion) at 16 (asserting,

---

the Order Extending Deadline, see Appellee's Appendix Ex. F (dkt. 6-1) at 48, and the Order Extending Deadline listed the documents that were missing, see Appellee's Appendix Ex. E at 43.

[5] In his reply brief, Williams suggests for the first time that he had timely submitted all required documents to the bankruptcy court but that they were "in transit" or "crisscrossed" in the mail.  See Appellant's Reply Brief at 8–10.  The Court notes that the list of creditors that Williams ultimately submitted bears his signature next to the date "2/10/2022." Appellee's Appendix Ex. H (dkt. 6-1) at 54.

incorrectly, that the bankruptcy court dismissed his case initially because of the lack of a certificate of credit counseling, and reinstated it because he filed a certificate of credit counseling; adding that "in the interim, [Appellee], in bad faith sneaked in when they maliciously sold the subject property to an undisclosed party in an auction on February 3, 2022").

On April 6, 2022, the Chapter 13 Trustee filed a motion to vacate the second dismissal. See Appellant's Opening Brief Ex. A at 18–25. That motion explained that while Williams had not timely filed a valid certificate of credit counseling, he did eventually do so. Id. at 20–21 ("six days after the entry of the Dismissal Order, the Debtor filed another Amended Opposition . . . on March 24, 2022. . . . attached to the Amended Opposition as Exhibit A was a valid pre-petition counseling certificate issued by an approved credit counseling agency, timely obtained on October 5, 2021."); id. at 21–22 ("Debtor had in fact properly obtained a valid pre-petition credit counseling certificate on October 5, 2021, which he could and should have filed at the outset of the case instead of filing [a different, invalid one]."). The bankruptcy court vacated the second dismissal order on April 20, 2022. Appellee's Appendix Ex. T (dkt. 6-2) at 153–54.

Then, on May 12, 2022, the bankruptcy court denied Williams's motion to reverse the February 3, 2022 foreclosure sale. See Appellee's Appendix Ex. S (dkt. 6-2) at 148–49. It explained that it had dismissed the bankruptcy case on January 20, 2022 not due to clerical error, but because Williams had failed to file a list of creditors. Id. at 148. The bankruptcy case was reinstated only once Williams filed a list of creditors. Id. at 148–49. The bankruptcy court further explained that the dismissal of the bankruptcy case had terminated the automatic stay, and that reinstatement of the bankruptcy case restores an automatic stay only prospectively. Id. at 149 (citing In re Sewell, 345 B.R 174, 179 (B.A.P. 9th Cit. 2006)). It also cited the Ninth Circuit Bankruptcy Appellate Panel's holding that a "bankruptcy court may not retroactively reinstate the automatic stay to invalidate a foreclosure sale that has already occurred." Id. (quoting In re Dutra, BAP No. SC-20-1267-LGH, 2021 WL 4596570, at *3 (B.A.P. 9th Cir. Oct. 6, 2021)).

### D. Appeal

Williams appeals the bankruptcy court's denial of his motion to reverse the foreclosure sale. See Appellant's Opening Brief at 5.

## II. LEGAL STANDARD

A district court's role in reviewing an appeal from the bankruptcy court is that of an appellate court. 28 U.S.C. § 158(a). It applies a "clearly erroneous" standard to the bankruptcy court's findings of fact, and reviews that court's conclusions of law de novo. Robertson v. Peters (In re Weisman), 5 F.3d 417, 419 (9th Cir. 1993); Briggs v. Kent (In Re Professional Investment Properties of Am.), 955 F.2d 623, 626 (9th Cir. 1992), cert. denied, 506 U.S. 818 (1992). A bankruptcy court's decision as to whether to grant nunc pro tunc or retroactive relief is reviewed for an abuse of discretion. In re National Env't Waste Corp., 129 F.3d 1052, 1054 (9th Cir. B.A.P. 2005).

## III. DISCUSSION

Williams argues that the bankruptcy court erred because: (1) it should not have allowed Appellee to foreclose on the Groveland property "during a mistaken dismissal of bankruptcy, not of Debtor's fault"; (2) reinstating the bankruptcy case should give the automatic stay retroactive effect, reversing the foreclosure; and (3) the bankruptcy court allowed Appellee "to maintain foreclosure of Debtor's property." Appellant's Opening Brief at 2. These arguments are unpersuasive.

### A. The Cause and Impact of the First Dismissal

Williams's first argument is that the bankruptcy court should not have allowed Appellee to foreclose on the Groveland property after the First Dismissal Order. Id. at 11. He contends that the First Dismissal Order was a mistake because when he "filed for his bankruptcy, the automatic stay was in place pursuant to 11 USC Code 362 and should not have been disturbed, especially when all the requirements were met by the debtor." Id.; see also id. at 8 ("all requirements were met by Debtor"). The problem with this argument is that Williams plainly did not meet all of the requirements. The bankruptcy court repeatedly alerted Williams that his filing was deficient. See, e.g., Order to File Required

Documents at 24; Notice at 27–28; Order Extending Deadline at 45. The bankruptcy court dismissed Williams's bankruptcy case on January 20, 2022 because Williams had failed to file a list of creditors.[6]  See First Dismissal Order at 48; Order Extending Deadline at 43 (listing "List of Creditors" as missing); Appellee's Appendix Ex. I (dkt. 6-1) at 58 ("On January 20, 2022, the court dismissed the case for failure to file the List of Creditors."). That Williams later filed a list of creditors, see supra note 5, does not mean that the earlier dismissal was a mistake.

Indeed, the First Dismissal Order was appropriate. This case is nothing like In re Krueger, 88 B.R. 238 (B.A.P. 9th Cir. 1988), where the bankruptcy court had dismissed the debtors' bankruptcy case because they did not appear at a hearing, and the Ninth Circuit's Bankruptcy Appellate Panel concluded that the dismissal was void (and therefore a foreclosure that occurred during the dismissal was also void) because the debtors had never received notice of the hearing. Here, Williams had plenty of notice and opportunity to cure the problem with his bankruptcy petition, see, e.g., Order to File Required Documents at 24; Notice at 27–28; Order Extending Deadline at 45, and he did not do so.[7]

---

[6] Williams appears to conflate his case's two dismissals. He describes the first dismissal as resulting from the Chapter 13 Trustee's mistaken understanding that Williams had not filed a valid credit counseling certificate. See, e.g., Appellant's Opening Brief at 8–9, 11–13. But the first dismissal was about Williams's failure to file a list of creditors. See First Dismissal Order at 48; Order Extending Deadline at 43 (listing "List of Creditors" as missing); Appellee's Appendix Ex. I (dkt. 6-1) at 58 ("On January 20, 2022, the court dismissed the case for failure to file the List of Creditors."). The second dismissal, which occurred after the foreclosure sale, was about Williams's failure to file a valid credit counseling certificate. Appellee's Appendix Ex. N at 4–5. Even that dismissal was not a mistake: Williams had timely obtained a valid credit counseling certificate, but did not timely file it with the bankruptcy court. See Appellant's Opening Brief Ex. A at 18–25; Appellant's Opening Brief at 9 (seemingly acknowledging that a valid credit counseling certificate "could and should have [been] filed at the outset of the case"). It was the First Dismissal Order—the one based on the failure to file a list of creditors—that led, two weeks later, to the foreclosure sale.

[7] Williams also asserts for the first time in his reply brief that "The first dismissal on the January 20, 2022, however was not known by Appellant due to the lack of Notice thereof." Appellant's Reply Brief at 5; id. at 8–9 (notice of First Dismissal Order not timely received); id. at 13 (same). The Court is unaware of any instance in the record where Williams alerted the bankruptcy court that he had not received notice of the First Dismissal Order, even when he filed his motion to reinstate. See Appellee's Appendix Ex. G at 51–52. He did not argue in his opening brief to this Court that he did not receive notice of the First Dismissal Order. See generally Appellant's Opening Brief. Nor does it make sense that Williams would not have received the First Dismissal Order, as it was mailed to his

7

He did not satisfy 11 U.S.C. § 521(a)(1), which requires a debtor to file "a list of creditors." Nor did he comply with the bankruptcy court's Order Extending Deadline. Unlike in In re Krueger, 88 B.R. at 241, due process was not the problem. This circuit permits a bankruptcy court to dismiss a case, without further notice or hearing, if the debtor fails to file the required documents within 14 days of filing his petition or an extension of that deadline by order of the court. In re Tennant, 318 B.R. 860, 870–71 (9th Cir. B.A.P. 2004) ("a procedure is 'perfectly appropriate' that notifies the debtor of the deficiencies of his petition and dismisses the case sua sponte without further notice and a hearing when the debtor fails to file the required forms within a deadline"). That is precisely what happened.

When the bankruptcy court dismissed Williams's bankruptcy case, the automatic stay terminated. See 11 U.S.C. § 362(c)(2)(B) ("the stay . . . continues until . . . the time the case is dismissed."); In re Weston, 110 B.R. 452, 456 (E.D. Cal. 1989) ("The legislative history and structure of the code indicates that dismissal of a case should terminate the automatic stay."), aff'd 123 B.R. 466 (9th Cir. 1991), aff'd 967 F.2d 596 (9th Cir. 1992), cert. denied sub nom. Weston v. Rodriguez, 506 U.S. 1051 (1993). When an automatic stay has terminated, a subsequent foreclosure sale does not violate the automatic stay. Id. at 456–57 ("the foreclosure action did not violate the automatic stay because the stay was not in effect at the time the foreclosure took place."); In re Nagel, 245 B.R. 657, 662–64 (D. Ariz. 1999) ("no basis in law for the proposition that the automatic stay continues after dismissal of a case."); see also Appellant's Reply Brief at 5, 13 (acknowledging "general rule that foreclosure can be obtained when bankruptcy is legally dismissed.").

---

home address, where other filings were also mailed. See First Dismissal Order at 49; Order to File Required Documents at 25; Notice at 28; Order Extending Deadline at 45. Moreover, Williams does not claim to have lacked notice of the court communications leading up to the First Dismissal Order, which independently put Williams on notice of the deficiency of his petition and of the court's right to dismiss the case based on such deficiency without further notice or hearing. See, e.g., Order to File Required Documents at 24; Notice at 27–28.

Accordingly, the bankruptcy court did not err by "allowing" a non-judicial foreclosure sale to occur after the First Dismissal Order.

### B. The Impact of Reinstatement

Williams's second and third arguments are essentially the same: that having reinstated the bankruptcy case after the First Dismissal Order and foreclosure sale, the bankruptcy court should have given retroactive effect to the automatic stay and therefore reversed the foreclosure sale. Appellant's Opening Brief at 12–14. This argument appears premised on the notion that the First Dismissal Order was a mistake. See, e.g., id. at 8 (conceding that "there are situations when there can be no retroactive effect of the automatic stay when a bankruptcy is reinstated," but arguing that "this is not so in the instant case. . . . because the dismissal of the bankruptcy was . . . [a] mistake of the Chapter 13 trustee."); id. at 13 ("If there was mistake made, it was by the Chapter 13 Trustee because she initially dismissed the Debtor's Bankruptcy, not knowing that Debtor had already completed his credit counselling requirement. . . . Because of this mistaken belief, the automatic stay should be substantially and legally in effect from the beginning."). However, this Court has already rejected Williams's assertion that the first dismissal was a mistake—and noted that it was unrelated to the certificate of credit counseling. See supra Section III(A). The bankruptcy court did as well. See Appellee's Appendix Ex. S ("Debtor argues that because his case was later reinstated on February 14, 2022, that the foreclosure sale should be reversed. This is based on the incorrect assertion that the dismissal on January 20 was due to clerical error.").

Reinstating a bankruptcy case does not mean that the dismissal of the bankruptcy case and the termination of the automatic stay never happened. The bankruptcy court's order here, like the order in In re Sewell, 345 B.R at 180, said nothing about retroactively imposing the automatic stay. See Appellee's Appendix Ex. J. The Ninth Circuit's Bankruptcy Appellate Panel reasoned in In re Sewell that setting aside the dismissal "may imply only prospective relief." 345 B.R. at 180. It explained that retroactively imposing an automatic stay "would void not only the foreclosure sale but possibly other events that

9

we and the bankruptcy court know nothing about." Id.[8] Here, for example, retroactively imposing the automatic stay would void not only the foreclosure sale but also the payments to junior lienholders. See Appellee's Appendix Ex. Q at 24 ¶ 8. The rights of third parties vest in reliance on dismissal and foreclosure. Numerous courts have therefore held that reinstating a case does not retroactively reimpose an automatic stay. See, e.g., In re Nagel, 245 B.R. at 662 (criticizing a bankruptcy court for retroactive reinstatement of automatic stay as "squarely at odds with the plain reading of subsection 362(c)(2)" and stating that "[b]y 'undoing' the return to the status quo ante through the retroactive application of the stay, the bankruptcy court engaged in a kind of judicial time travel that cannot be reconciled with the law."); In re Thomas, 194 B.R. 641, 650 (D. Ariz. 1995) ("the reinstatement of this case does not retroactively reimpose the automatic stay") (citing Lashley v. First Nat'l Bank of Live Oak (In re Lashley), 825 F.2d 362 (11th Cir. 1987) cert. denied, 484 U.S. 1075 (1988), reh'g denied, 485 U.S. 1016 (1988); other cases).

Indeed, several courts, including the Ninth Circuit's Bankruptcy Appellate Panel, have held that a bankruptcy court does not have the authority to retroactively impose an automatic stay in this context. See, e.g., In re Dutra, 2021 WL 4596570, at *3 ("A bankruptcy court may not retroactively reinstate the automatic stay to invalidate a foreclosure sale that has already occurred."); In re Singleton, 358 B.R. 253, 260 (D.S.C. 2006) ("Bankruptcy Court had no authority to re-impose the automatic stay on property no longer included in the bankruptcy estate"; "this court is unaware of any authority that grants the bankruptcy court power to retroactively impose a stay."). A foreclosure sale that occurs between the dismissal of a case (and the resultant termination of an automatic stay) and the reinstatement of a case (and the resultant resumption of an automatic stay) therefore does not violate the automatic stay. See In re Singleton, 358 B.R. at 260 ("no violation of the automatic stay because the foreclosure sale took place after the Bankruptcy

---

[8] See also id. ("We also question whether retroactive imposition of the automatic stay as if it had never terminated would be appropriate in these circumstances. . . . if reinstatement orders were to retroactively impose the automatic stay there would be no way to protect against the sale being rendered retroactively void at some future date.").

Court's dismissal order and before the Bankruptcy Court vacated the dismissal order"); In re Nagel, 245 B.R. at 662 ("The original stay only continued until the time Nagel's case was dismissed. Thus, as of November 5, 1997, there was no stay in place and there was no stay standing in the way of the trustee's sale of December 2, 1997.").

Accordingly, the bankruptcy court did not err by declining to reverse the foreclosure sale.

IV. CONCLUSION

For the foregoing reasons, the Court AFFIRMS the ruling of the bankruptcy court.

**IT IS SO ORDERED.**

Dated: February 16, 2023

CHARLES R. BREYER
United States District Judge